IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00035-CR

 

Samuel Guthrie,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 40th District
Court

Ellis County, Texas

Trial Court No. 28053CR

 



MEMORANDUM  Opinion



 

            Appellant Samuel Guthrie was
charged by indictment with the state jail felony offense of theft by check.  See
Tex. Pen. Code Ann. § 31.03
(Vernon 2003).  Pursuant to a plea agreement, Guthrie pleaded guilty, and the
trial court assessed his punishment at 730 days’ confinement and a $500 fine.  The
court then suspended the sentence and placed Guthrie on community supervision
for three years.  Condition number one of Guthrie’s community supervision
required that he “[c]ommit no offense against the laws of this or any other
State or of the United States; further, report to the Supervision Officer
within 48 hours if arrested or questioned by a law enforcement officer.”

The State subsequently filed a motion to
revoke Guthrie’s community supervision.  The motion alleged that Guthrie
violated condition one in that 

on or about April 16, 2007, in Ellis
County, Texas, the said defendant did then and there unlawfully appropriate, by
acquiring or otherwise exercising control over, property, to-wit: a 14-foot
home-made flatbed trailer, from the person of John Paul Colwell, the owner
thereof, with intent to deprive the owner of the property.

 

After a hearing, the trial court found
that Guthrie had violated condition one, as well as three other conditions. 
The court then revoked Guthrie’s community supervision and assessed his
punishment at 730 days’ confinement in state jail and a $500 fine.

In one issue, Guthrie contends that the
trial court abused its discretion in revoking his community supervision.  He
argues that the State failed to prove each of the alleged violations by a
preponderance of the evidence.  Because there is sufficient evidence to show
that Guthrie violated condition one of his community supervision as alleged in
the State’s motion to revoke, we need only address that issue.  See Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980); Holmes v. State, 752
S.W.2d 700, 701 (Tex. App.—Waco 1988, no pet.) (“One ground for revocation, if
proven, is sufficient to revoke probation.”).  








Appellate review of an order revoking
community supervision is limited to whether the trial court abused its
discretion.  Forrest v. State, 805 S.W.2d 462, 464 n.2 (Tex. Crim. App.
1991); Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); see
also Maxey v. State, 49 S.W.3d 582, 584 (Tex. App.—Waco 2001, pet. ref’d). 
An order revoking community supervision must be supported by a preponderance of
the evidence; in other words, that greater weight of the credible evidence that
would create a reasonable belief that the defendant has violated a condition of
his community supervision.  Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974).  The State is required to sustain the burden of proving the
allegations of the motion to revoke community supervision.  Id.; Cobb
v. State, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993).  

The following relevant evidence was
presented by the State at the hearing on the State’s motion to revoke.  John
Colwell testified that he contacted the Waxahachie Police Department because he
thought he spotted the fourteen-foot flatbed trailer that he had reported
stolen from his storage facility one week prior.  The trailer was underneath an
unattached carport at 504 Oldham Street.  Sergeant Rodney Guthrie testified
that, after being contacted by Colwell, he and Sergeant Woodruff met Colwell at
his storage facility.  There, Colwell drew a sketch and gave them a detailed
description of the trailer.  Colwell and his father had built the trailer, and
it had several distinctive features that other trailers did not have.  Colwell
testified that it was worth no less than $1,500.

Sergeant Guthrie and Sergeant Woodruff
then went to 504 Oldham Street and talked to the resident, May Elaine Jeter.  Sergeant
Guthrie testified that when the police sergeants asked Jeter about the trailer,
she told them that she and her boyfriend Guthrie had had the trailer for about
a year.  Jeter then allowed the police sergeants to go look at the trailer. 
Sergeant Guthrie stated that it was “an exact match” to the description and
sketch given by Colwell.  He thus called Colwell, who came to the location.

Sergeant Guthrie testified that when
Colwell came to the location, he identified the trailer, as well as a piece of
fence post underneath the storage shed at the back of the residence and two
wooden blocks in the bed of the truck on the property that were his.  Colwell
testified that the trailer had also recently been painted black and a can of
paint was still sitting on the trailer.

Sergeant Guthrie testified that they then
confronted Jeter, and she changed her story.  Sergeant Guthrie stated, “She
explained that the trailer had appeared at the residence approximately two
weeks prior.  That [Guthrie] had brought it to the home sometime in the night,
maybe after work.”  Jeter told Sergeant Guthrie that she asked Guthrie about
the trailer but that he told her not to ask questions about it because it was “none
of her concern.”  Jeter never said anything to Sergeant Guthrie about Guthrie
having been given the trailer or having bought the trailer from someone else. 
Sergeant Guthrie and Sergeant Woodruff then took an affidavit from Jeter and
got a warrant for Guthrie for theft of property valued at $1,500 or more but
less than $20,000.  See Tex. Pen.
Code Ann. § 31.03.

To refute the State’s evidence, Guthrie
presented the following relevant evidence at the hearing on the State’s motion
to revoke.  Jeter testified that she had been married to Guthrie for three
years and that their home address is 504 Oldham in Waxahachie.  She stated that
the trailer was brought to her home by a gentleman named Bookie Williams one
night in April 2007.  On the night the trailer arrived at the house, she heard
a vehicle and went outside about twenty minutes later.  Guthrie was outside
with the trailer.  She asked him where he got it, and he told her that she
“asked questions a lot,” so she went back inside.

            Jeter testified that the
police came to her house a couple of weeks after the trailer showed up.  She
initially told them the trailer had been there for a year because she confused
it with a trailer that she had gotten in a divorce settlement.  She stated
that, as far as she knows, Bookie brought the trailer to her house.  Her truck
was broken down at the time and would have been incapable of delivering the
trailer to her home.  Guthrie told her that he had bought the trailer from
Bookie, and she had an original receipt that Guthrie gave to her after the
police came to her house.

            Likewise, Guthrie testified
that he did not steal the trailer.  He stated that he agreed to pay Bookie to
help him work on his roof but, before the roofing job was completed, Bookie
wanted Guthrie to advance him some money.  Guthrie told Bookie that he could
not do that, but he then agreed to let Bookie pawn the trailer to him.  Guthrie
testified that Bookie pulled the trailer from McClain Street to Guthrie’s house
on April 5.  He stated that because he did not have anywhere to chain the
trailer, they moved his son’s truck in front of the trailer.  He stated that
the truck has a first gear, but not a second or third gear.

            Guthrie testified that the
trailer was painted black one or two days before Colwell and Sergeant Guthrie arrived
at his house.  He stated that his son had asked him if he could paint the
trailer, and he allowed the trailer to be painted because the “time limit of
the agreement” between Bookie and himself had passed.

            Guthrie testified that he
was at work when the police sergeants and Colwell had come by the house but
that Sergeant Guthrie had left a card, and he had called Sergeant Guthrie as
soon as he got home.  He stated that he had asked Sergeant Guthrie to please
contact him.  Guthrie also stated that once he was arrested, his wife brought
the receipt he had received from Bookie to the police station.

            In a hearing to revoke
community supervision, the trial court, as the fact finder, is the exclusive
judge of the witnesses’ credibility and the testimony’s weight.  Garrett v.
State, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981).  Therefore,
the trial court was free to accept the testimony of Colwell and Sergeant
Guthrie and reject the testimony of Jeter and Guthrie.  See id.  Thus, the
trial court reasonably could have found by a preponderance of the evidence that
Guthrie violated condition one of his community supervision as alleged in the
State’s motion to revoke, and the trial court did not abuse its discretion in
revoking Guthrie’s community supervision.  We overrule Guthrie’s sole issue and
affirm the trial court’s judgment.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed October 28, 2009

Do
not publish

[CR25]